**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CANDACE EPPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 2:05-CV-00498-C** |
| | ) | |
| **WALGREEN CO., INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

# <u>DEFENDANT'S BRIEF IN SUPPORT OF ITS</u>
# <u>MOTION FOR SUMMARY JUDGMENT</u>

John Richard Carrigan (CAR014)
Alysonne Hatfield (HAT012)
**Ogletree, Deakins, Nash, Smoak &**
**Stewart, P.C.**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL 35203-2118
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
E-mail: richard.carrigan@odnss.com
E-mail: alysonne.hatfield@odnss.com
ATTORNEYS FOR DEFENDANT,
WALGREEN CO., INC.

## I.     INTRODUCTION

Ms. Candace Epps ("Plaintiff" or "Epps") has sued Walgreen Co., Inc. ("Defendant" or "Walgreen") for race discrimination in promotion pursuant to 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981, alleging that she was passed over for promotion for two Store Manager positions, and that Defendant engaged in a pattern and practice of race discrimination. Plaintiff has no direct evidence of race discrimination affecting her or anyone else, and Plaintiff has no evidence of a pattern and practice of discrimination. Plaintiff does not have sufficient circumstantial evidence to show a racial motive in either promotion decision; nor does she have any evidence to dispute Walgreen's legitimate, nondiscriminatory reasons for selecting other persons for those jobs, and she has no evidence of pretext.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Employment at Walgreen

Walgreen District Manager David Sheppard[1] hired Ms. Epps as an Assistant Manager ("MGT") for Walgreen's Montgomery area South Boulevard store starting on **July 21, 2002**.[2] (Tab A - Deposition of Candace Epps, p. 8, l. 10-19; p. 14, l. 4-22; Ex. 4 to Tab A – Employment Record of Candace Epps). Epps then reported directly to Store Manager Shahn Michiels, who was later replaced by Store Manager James Freeman. (Tab A, p. 14, l. 23 – p. 15, l. 12; p. 24, l. 14 - p. 25, l. 6). Freeman recommended Plaintiff for promotion from Assistant Store Manager to the Executive Assistant position

---

[1] District Manager Sheppard supervised all Walgreen stores in Alabama, until August, 2004, when Walgreen's Alabama store districts were realigned so that he took responsibility for Birmingham and northern Alabama area stores, and Paul Rengering took responsibility as District Manager for Walgreen stores in the Montgomery and South Alabama area. (Tab B – Declaration of David Sheppard, ¶¶ 3-4).
[2] The employees who received the promotions Epps sought, Leland Wallace and Jackelyn Vardaman Martin, had previously been hired on **October 27, 2001,** and **June 3, 2002,** respectively. (Tab B, ¶¶ 9, 13, Attachments A and B to Declaration)

(hereafter "EXA"), and District Manager David Sheppard approved her promotion to EXA in **July, 2003**.[3]  (Tab A, p. 8, l. 20- p. 9, l. 9, p. 111, l. 3 – p. 112, l. 4, p. 114, l. 4-6; Ex. 4 to Tab A; Tab B, ¶ 6).

> **B.**    **Qualifications for Promotion to Store Manager**

Walgreen typically selects Store managers from experienced EXAs who have passed the PTCB test (hereafter "PTCB") for pharmacy certification. One of Walgreen's personnel policies, available to Epps and produced in her initial disclosure of evidence in this action, states:

> **All employees are to be given equal opportunity for advancement. If all other considerations are equal, length of service with the company should be considered in making a promotional decision. (Tab A, Ex. 1 – Plaintiff's Initial Disclosures)**

In early 2004[4], Epps acknowledged in her self-evaluation as an EXA that she needed improvement in pharmacy operations, as well as store computer systems, and Store Manager James Freeman wrote that she needed more experience before she was considered for promotion to Store Manager.  (Tab A, p. 17, l. 4 – p. 18, l. 19; Ex. 2 – Performance Review for Period Ending March 16, 2004).  Epps conceded in deposition that she needed to pass the PTCB for certification as a pharmacy technician before being promoted to Store Manager.  (Tab A, p. 19, l. 6-14, p. 114, l. 18 - p. 115, l. 7)   Epps passed the PTCB in March 2004.  (Tab A, p. 19, l. 15-18).

Epps acknowledges that, while passage of the PTCB is a minimum qualification necessary for promotion to the position of Store Manager, promotion is not automatic. (Tab A, p. 114, l. 10 – p. 115, l. 10).  At the time Epps passed the PTCB, several other

---

[3] Leland Wallace had been promoted to EXA in May 2003; Jackelyn Vardaman Martin had been promoted to EXA in July 2003.  (Tab B, ¶¶ 9, 13; Attachments A and B).

[4] Epps testified that, while her 2004 evaluation was dated March, 2004, she and Mr. Freeman actually completed it in January, 2004.  (Tab A, p. 18, l. 18 – p. 19, l. 5; Ex. 2 to Tab A).

EXAs in Sheppard's district had also passed the PTCB, but had not been promoted to Store Manager, including Terry Criswell and Jeff Bennett, both of whom are Caucasian. (Tab A, p. 19, l. 19 – p. 20, l. 5, p. 47, l. 18 – p. 48, l. 1, p. 114, l. 10 – p. 115, l. 10).

Epps testified that she told District Manager David Sheppard in May, 2004, that she believed she was ready to be promoted to the position of Store Manager, and that her manager, James Freeman, also believed she was ready to be promoted as a Store Manager.  (Tab A, p. 21, l. 3 – p. 23, l. 7).  Epps testified that Sheppard responded that he did not feel that he knew her as well as he would like, and that he wanted her to work for at least two experienced Store Managers before she was promoted to the same position. (Tab A, p. 23, l. 9 – p. 24, l. 9).  According to Epps, when she pointed out that she had already worked for two Store Managers – Mr. Michiels and Mr. Freeman – Sheppard told her that her time working for Mr. Michaels "didn't count because he wasn't a good manager."[5]  (Tab A, p. 24, l. 14-20).

Epps admits that she never applied for the September, 2004, Perry Hill Road Store Manager position, but contends that her May and June, 2004, conversations with Sheppard when she told Sheppard that she believed she was ready to be promoted qualifies as an application.  (Tab A, p. 39, l. 23 – p. 40, l. 7).  Epps never specifically told Sheppard that she desired to be promoted to Store Manager of the Perry Hill Road, or any other, store, but stated her belief that she was ready to be promoted.  (Tab A, p. 42, l. 1 – p. 47, l. 15).  Epps recalls that Sheppard told her that he did not think she was ready. (Tab A, p. 23, l. 9 – p. 24, l. 9, p. 40, l. 8-18).

---

[5] District Manager David Sheppard had fired Michiels for policy violations and poor performance.  (Tab B, ¶ 6).

Epps is aware of at least three Caucasian EXA's who were denied a promotion to Store Manager at the same time as she. (Tab A, p. 82, l. 13 – p. 83, l. 19, p. 158, l. 14 – p. 159, l. 2). Epps also admits that no other EXA in the Montgomery area was promoted to the position of Store Manager more quickly than she during the same time period. (Tab A, p. 160, l. 6-9).

### C.    The Opening of the Perry Hill Road Store

In June, 2004, District Manager David Sheppard assigned Ms. JoAnn Jones, who was an experienced Walgreen Store Manager at the Atlanta Highway Store (#7746), to be responsible for opening the new Perry Hill Road Store. Sheppard assigned Epps to work as an EXA under JoAnn Jones at the new Perry Hill Road store. (Tab A, p. 23, l. 9 – p. 28, l. 10). Sheppard told Plaintiff he thought it would be instructive for her to work with an experienced Store Manager, such as Ms. Jones, during the opening of a new Walgreen store. (Tab B, ¶ 8).

Epps reported to Ms. Jones for approximately two months, when Ms. Jones returned to the Atlanta Highway Store and Leland Wallace became Store Manager at the Perry Hill Road Store, effective September 1, 2004 (Tab A, p. 28, l. 11 – p. 29, l. 2; Ex. 6 – Employment Record of Leland Wallace, Jr.).

When Leland Wallace left the Perry Hill Road Store, Epps was promoted to Store manager of the Perry Hill Road Store, in February 2005. (Tab A, p. 29, l. 9-22).

### D.    Promotion of Leland Wallace

Leland Wallace began working for Walgreen as a Management Trainee, or Assistant Manager (MGT), in Zephyrhills, Florida, on October 27, 2001. (Tab A, p. 109, l. 14 – p. 110, l. 8; Ex. 6). He later laterally transferred to a Seffner, Florida, Walgreen

store, in January, 2002, and again to a Brandon, Florida, Walgreen store in September, 2002. (Tab A, Ex. 6). Wallace was promoted to EXA in May, 2003, and he worked in this capacity at the Brandon, Florida, store until October, 2003, at which time he laterally transferred to a Birmingham, Alabama, Walgreen store. (Tab A, Ex. 6). Mr. Wallace worked as an EXA at the Birmingham store from October, 2003, until June, 2004. When Wallace relocated from Florida to Alabama, Jim Huntington, an experienced District Manager whose opinion Sheppard respected had recommended Wallace to Sheppard as an excellent candidate for a Store Manager position. (Tab B, ¶¶ 9-11).

Sheppard promoted Leland Wallace to the position of Store Manager in June 2004, and temporarily moved him to Walgreen's Atlanta Highway Store (No. 7746), while JoAnn Jones opened the new Perry Hill Road Store. (Tab A, Ex. 6; Tab B, ¶¶ 9-10).

At the time of Wallace's promotion to Store manager in June 2004, Wallace had more experience with Walgreen than Epps (Wallace, about 32 months from October 27, 2001; Epps, about 23 months from July 21, 2002), and Wallace had been an EXA longer than Epps (since May 2003 for Wallace; since July 2003 for Epps). (Tab A, Exs. 4 and 6). Epps does not dispute that Wallace had longer service with Walgreen than she had, and that he was an EXA at two different stores, and thus reported to two different managers, prior to his promotion to Store Manager. (Tab A, p. 111, l. 20 – p. 112, l. 15, p. 155, l. 12-23; Ex. 6; Tab B, ¶ 11).

Sheppard was aware of Plaintiff's belief that she was ready for promotion, as well as Store Manager James Freeman's recommendation of her for promotion. (Tab B, ¶ 11). While Sheppard believed that, with additional experience, Epps would make a good

candidate for Store Manager, he placed greater weight on Wallace's longer service record with Walgreen, as well as the recommendation of his fellow District Manager, Jim Huntington, over that of Store Manager James Freeman, when he promoted Leland Wallace to Store Manager. (Tab B, ¶ 11).

### E.      Promotion of Jackelyn Vardaman (Martin)

In July 2004, Sheppard promoted Jackelyn Vardaman (now Martin) to Store Manager of Walgreen's Valleydale Road Store in Birmingham. (Tab B, ¶ 13). Vardaman, who started with Walgreen as a Business Management intern on June 3, 2002, had slightly longer service than Epps, who started July 22, 2003. (Tab B, ¶13, Attachment B). Vardaman, a college graduate, was familiar with the Valleydale Road Store, having worked there for one year as EXA before her promotion. (Id.)

Sheppard selected Vardaman (Martin) because he considered her to be better qualified than Epps for promotion to Store Manager in the Valleydale Road Store in July 2004 based on her performance in the Valleydale Road Store and her prior experience as a business management intern. Vardaman (Martin) had slightly longer service with Walgreen that Epps. (Id.). Moreover, Epps never told Sheppard that she was interested in moving to Birmingham, and never applied for the Valleydale Road Store. (Tab A, p. 156, l. 1 – p. 158, l. 13; Tab B, ¶ 14).

### F.      Promotion of Ms. Epps

In February, 2005, Epps was promoted to Store Manager in the Perry Hill Road Store, to replace Leland Wallace. (Tab A, p. 7, l. 20 – p. 8, l. 3, p. 9, l. 15 – p. 10, l. 4). That decision was made by Paul Rengering, who had been assigned as District Manager over Walgreen stores in South Alabama, including the Montgomery area. (Id.) At the

time of her promotion, Epps had 30 months' experience with Walgreen, slightly less than the approximately 32 months' experience with Walgreen that Wallace had at the time of his promotion in June 2004.  (Tab A, p. 111, l. 20 – p. 112, l. 15; Exs. 4 and 6).

### G.    Plaintiff's Perceptions of Race Discrimination

Epps believes that Mr. Wallace's promotion to the Perry Hill Road Store Manager in September, 2004, was based on race because she "felt like (she) was more than ready to go.  (Her) store manager said she was ready to go, and they promoted someone else that was white and he was not ready to go.  He was not ready for that position."  (Tab A, p. 29, l. 9 – p. 30, l. 22).  Plaintiff also alleges that she was also discriminatorily denied a Store Manager position in the Birmingham, Alabama, area in approximately June, 2004. (Tab A, pp. 156, l. 1 – p. 158, l. 13; Plaintiff's Complaint, ¶ 30; Tab B, ¶ 13).

When asked why she believed Wallace was not ready to be promoted to the position of Store Manager, Epps testified that she was not aware of Wallace's prior experience, and was not aware of the number of Walgreen Store Managers he had reported to prior to his promotion to that position.  (Tab A, p. 30, l. 23 – p. 32, l. 14). Epps recalls that her former Store Manager, James Freeman, told her he did not believe Wallace to be very experienced.  (Tab A, p. 32, l. 15 – p. 36, l. 20).  Epps admits, however, that Wallace never reported to Freeman, and that Freeman never had the opportunity to work alongside Wallace.  (Tab A, p. 37, l. 8 – p. 38, l. 15).

The only other evidence of racial discrimination that Ms. Epps claims to have suffered is hearing second-hand that her former Store Manager, James Freeman[6], made a remark expressing a belief that African Americans enjoy eating fried chicken and

_____

[6] Epps also claims that Mr. Freeman supported her efforts to be promoted to Store Manager.  (Plaintiff's Complaint ¶ 20).

watermelon to another African American employee. (Tab A, p. 75, l. 22 – p. 77, l. 23, p. 80, l. 10 – p. 81, l. 8). Plaintiff concedes, however, that she does not personally recall any comments made by Freeman that she considered an indication that he was discriminating against her based on her race, and acknowledges that Freeman promoted her to the EXA position, that he told her he believed she was qualified to be a Store Manager, and that he recommended her for such a position. (Tab A, p. 149, l. 21 – p. 152, l. 21; Plaintiff's Complaint, ¶ 20). James Freeman played no role at all in the promotions of Leland Wallace and Jackelyn Vardaman (Martin), however, and Epps has no evidence that David Sheppard, or any other Walgreen management employee has ever made pejorative remarks based on race. (Tab A, p. 67, l. 14 – p. 72, l. 33, p. 80, l. 19 – p. 81, l. 22, p. 150, l. 10 – p. 151. l. 23)

### H.    Plaintiff's Pattern and Practice Allegations

In her Complaint, Plaintiff alleges that Walgreen has displayed a pattern and practice of racial discrimination in the central Alabama area because "[a]t least two Black Beauty Advisors ha [sic] been denied promotion in favor of a less-qualified, newly hired White applicant. Another fully-qualified and trained Black Photo Technician has been denied a promotion to Senior Photo Technician in favor of a lesser-qualified White applicant." (Plaintiff's Complaint, ¶ 37). The two African American Walgreen Beauty Advisors referred to by Plaintiff in her Complaint are Barbara Wilson and Kimberly Freeman, and the African American Photo Technician she refers to is Jason Gremillion,

who is currently working at the Perry Hill Road Store as a Senior Photo Technician. (Tab A, p. 133, l. 1 – p. 136, l. 10, p. 121, l. 10-12).[7]

Plaintiff identified four persons as illustrating a supposed "pattern" of discrimination in promotions by Walgreen – herself, Jason Gremillion, Kimberly Freeman, and Barbara Wilson. **Three of the four (Epps, Freeman, and Gremillion) had been promoted before Epps Complaint was filed, and the fourth (Wilson) withdrew from consideration for promotion when Epps herself had authority to make the promotion selection.** (Tab A, p. 7, l. 20 – p. 8, l. 3, p. 121, l. 10 – p. 122, l. 15, p. 125, l. 3 – p. 126, l. 23, p. 169, l. 3 – p. 170, l. 16; Tab C – Deposition of Jason Gremillion, p. 32, l. 2-7; Tab D – Deposition of Kimberly Freeman, p. 11, l. 18 – p. 12, l. 11).

Epps believes that Kimberly Freeman and Barbara Wilson were denied a Senior Beauty Advisor (hereafter "SBA") position that was filled by a Caucasian female she refers to as "Angela," but she is unaware of whether Ms. Freeman or Ms. Wilson ever applied for the disputed position. (Tab A, p. 133, l. 17 – p. 134, l. 15). Moreover, Epps does not recall Freeman ever expressing interest in a SBA position at the Perry Hill Road store. (Tab A, p. 132, l. 2-15).

Epps acknowledged in deposition that Barbara Wilson applied for a later SBA vacancy at the Perry Hill Road store while Leland Wallace was still the Store Manager there, and interviewed with Wallace for that job. (Tab A, p. 124, l. 21 – p. 126, l. 4). Before that SBA job at the Perry Hill Road Store was filled, however, Wallace transferred to another Walgreen store, and Epps was selected as the Perry Hill Road Store

---

[7] Wilson, Gremillion, and Freeman are represented by the same counsel in similar claims against Walgreen. Judge Albritton granted summary judgment against Freeman's claims on January 13, 2006 in Case 2:05CV356WHA; dispositive motion dates for Wilson and Gremillion are March 14, 2006.

Manager. (Tab A, p. 126, l. 5-11). When Epps herself became responsible for filling that SBA job, **Wilson informed Epps that she was no longer interested in that position, and Epps herself selected Sharonda Febler (incorrectly designated as "Wanda Felder" in Epps deposition), an African American female, for the position. (Tab A, p. 126, l. 12 – p. 127, l. 13).**

Jason Gremillion is an African-American male who currently works as the head photo technician at the Perry Hill Road store, and he was selected for this position by then Store Manager Leland Wallace in December, 2004. (Tab A, p. 121, l. 10-12, p. 122, l. 13-15; Tab C, p. 32, l. 2-7). In June, 2004, however, when Ms. JoAnn Jones was responsible for opening the Perry Hill Road store and filling the positions there, Gremillion worked at the South Boulevard store's photo department, which used Kodak film-developing equipment. (Tab A, p. 134, l. 23 – p. 136, l. 1). The new Perry Hill Road Store uses Fuji film-developing equipment, and the Caucasian female selected for the Senior Photo Technician position undisputedly had prior employment experience using Fuji machines, whereas Gremillion did not. (Tab A, p. 136, l. 2-14, p. 141, l. 3-11).

## III.    ARGUMENT

### A.    <u>Summary Judgment Standard</u>

Summary judgment is proper under Federal Rule of Civil Procedure 56(c) where the movant shows there is no genuine issue of material fact and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990). For a question of fact to be <u>genuine</u>, the party opposing summary judgment "'must do more than simply show that there is some <u>metaphysical doubt</u> as to the material facts.'" <u>Irby v. Bittick</u>, 44 F.3d 949,

953 (11th Cir. 1995) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

To defeat summary judgment, a plaintiff's evidence must be admissible or reducible to admissible form at trial. Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996), modified on other grounds, 102 F.3d 1118 (11th Cir. 1996), cert. denied, 520 U.S. 1274 (1997). Thus, a plaintiff cannot use inadmissible hearsay to defeat a motion for summary judgment where the hearsay will not be reducible to admissible form at trial. Id. In considering a motion for summary judgment, the trial court must, of course, consider all the evidence in the light most favorable to the non-movant. Earley, 907 F.2d at 1080. During this process, however, the court is only required to resolve reasonable doubts in the non-movant's favor; it is not required to resolve all doubts in his favor. Irby, 44 F.3d at 953; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

### B.  Plaintiff Fails to State a Claim of Promotion Discrimination

As Plaintiff has no direct evidence upon which to base her Title VII and § 1981 promotion claims, the burden-shifting analysis of circumstantial evidence under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See Cooper v. Southern Co., 390 F.3d 695, 724-25 (11th Cir. 2004) (holding that the same prima facie case and burden-shifting mechanisms apply to Title VII and § 1981 claims). To properly state a claim for promotion discrimination based on race, Plaintiff must how (1) she is a member of a protected class, (2) that she was qualified and applied for the promotion, (3) that she was rejected for the promotion, and (4) that someone outsider her protected class

filled the position.  See Summerlin v. M & H Valve Co., No. 05-11030, 2006 WL 93131 at *2 (11th Cir. January 17, 2006) (per curium).

If Plaintiff states a prima facie case of promotion discrimination, the burden of production shifts to Walgreen to articulate a legitimate, nondiscriminatory reason for the disputed employment action.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 246, 254 (1981).  Plaintiff may only survive summary judgment if she establishes that Walgreen's reasons for denying her a promotion to Store Manager in June, 2004, were pretextual by showing Walgreen denied her such promotions based on her race.  See Lee v. GTE Fla., Ind., 226 F.3d 1249, 1253 (11th Cir. 2000), cert. denied, 532 U.S. 958 (2001).

### 1. Plaintiff Fails to Make a Prima Facie Case with Respect to the Birmingham Area Store Manager Position

Plaintiff fails to state a prima facie claim for promotion discrimination for the Birmingham area Store Manager position because she did not apply for that job, and Walgreen had no reason or duty to consider her for that position.  See Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003); Walker v. Prudential Property and Casualty Co., 286 F.3d 1270, 1275-76 (11th Cir. 2002).  Plaintiff contends in her deposition that there is no written application process for promotions to Store Manager positions, but that interested employees are to express interest in any such position to the relevant decision-maker[8].  (Tab A, p. 171, l. 16 – p. 172, l. 13).  While it is undisputed that Plaintiff is African American, and a member of a protected class, that she was

---

[8] Curiously, Plaintiff does not actually seem to know whether or what jobs and/or promotions at Walgreen require written applications, as she testifies both that Walgreen does, and does not, have a formal application process for promotions.  (Tab A, p. 170, l. 23 – p. 172, l. 13).  For purposes of this summary judgment proceeding, however, Defendant will concede that, in most cases, internal promotions to the Store Manager position do not require a written application, but do require a clear expression of interest to the District Manager making the relevant hiring decisions.

minimally qualified for the Store Manager position, and that a Caucasian female was chosen for that job, Plaintiff fails her <u>McDonnell Douglas</u> application requirement because she undisputedly never expressed interest in a Birmingham relocation to her District Manager, David Sheppard.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Summerlin</u>, 2006 WL 93131 at *2.

Plaintiff may argue that her general expression of interest in being promoted to David Sheppard during their May and June, 2004, conversations satisfies her application requirement under <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 133 (11th Cir. 1984) (holding that, where an employer has "no formal procedures" for posting job availabilities and relies on "word of mouth" to fill vacancies in such a way to make such "important information … available only to whites," a plaintiff can meet her required showing under the modified <u>prima</u> <u>facie</u> case by establishing that a position was available and the employer had some reason or duty to consider her for the post).  <u>Carmichael's</u> holding is not applicable here because Plaintiff has made no showing that Walgreen utilizes any such informal, word-of-mouth job posting procedure that would result in job information being available only to Caucasian employees.  Assuming <u>arguendo</u> that she had, however, Plaintiff nonetheless fails to make a <u>prima</u> <u>facie</u> case because she undisputedly gave Defendant no reason or duty to consider her for the Birmingham Store Manager position, as she undisputedly never informed Mr. Sheppard she was interested in relocating there.  (Tab A, p. 156, l. 19 – p. 158, l. 13).

The facts of this case are most similar to those in <u>Walker v. Prudential Property and Casualty Co.</u>, where the Eleventh Circuit Court of Appeals held that, although the contested employment decision was made by informal means, the employer had no

reason or duty to know of the plaintiffs' interest in the position, and the plaintiffs thus failed to make their prima facie case. 286 F.3d at 1275-76. In Walker, the employer closed its Fort Lauderdale location, and laid off all but one of its Fort Lauderdale operations staff. Id. at 1272. The one remaining employee (a Caucasian male) transferred to Orlando, and two female employees (who lost their operations jobs due to the Fort Lauderdale closure) sued the employer, basing their claims on the fact that the male employee was promoted and transferred through informal means. Id. at 1271-72.

The Eleventh Circuit concluded there was no evidence the decision-maker at issue had any specific intent to discriminate against either woman. Id. at 1275-76. The male employee told the decision-maker on several occasions that he wanted to be considered for a transfer, whereas the plaintiffs did not. Id. at 1273, n.2, 1275-76. The court found the employer had no reason to believe the plaintiffs would have any interest in relocating because neither of them applied for a transfer, nor informed the relevant decision-maker that they wished to be transferred. Id. at 1276.

It is undisputed that Plaintiff never told David Sheppard that she wished or would be willing to transfer to Birmingham for a promotion to Store Manager, and she does not identify any other Walgreen management employee to whom she expressed any interest in relocation. (Tab A, p. 156, l. 1 – p. 158, l. 13). As such, Plaintiff fails to state a prima facie case of promotion discrimination with respect to the June, 2004, Birmingham Store Manager job.

### 2. Walgreen Had Legitimate, Nondiscriminatory Reasons for Not Promoting Plaintiff to the Perry Hill Road or the Birmingham Store Manager Positions

Plaintiff has alleged in her Complaint that Walgreen filled the June/July, 2004,

Store Manager positions in Montgomery's Perry Hill Road store, as well as a Birmingham area store, with individuals who were less qualified and/or experienced than she. "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex." Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) (holding that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where … the reason is one that might motivate a reasonable employer."); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (holding that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

While a plaintiff may show that a less qualified individual was chosen for a disputed position as circumstantial evidence of pretext, "under Eleventh Circuit precedent a mere disparity in qualifications between a rejected and a selected applicant is not enough to show pretext unless the disparity is 'so apparent as virtually to jump off the page and slap you in the face.'" Alexander v. Chattahoochee Valley Community College, 325 F. Supp. 2d 1274, 1286-87 (M.D. Ala. 2004) citing Alexander v. Fulton Co., 207 F. 3d 1303, 1340 (11th Cir. 2000). Plaintiff cannot show so great a disparity between her qualifications for Store Manager and those of Leland Wallace, who filled the Perry Hill Road position, and those of Jackelyn Martin, who filled the disputed Birmingham

position, to show Walgreen's reasons for not promoting her were pretextual, and Walgreen is entitled to summary judgment on her promotion claims.

### a.    Perry Hill Road Store Manager Position

While Plaintiff never submitted a formal application for the summer, 2004, Perry Hill Road Store Manager position, it is undisputed that she told David Sheppard that she wished to be promoted to Store Manager in May and June, 2004, and that he was aware of her interest in promotion at the time he promoted Leland Wallace.  (Tab B, ¶ ¶ 7-9). Plaintiff does not offer any evidence to counter Defendant's legitimate, nondiscriminatory reasons for selecting Wallace to manage the Atlanta Highway Store while JoAnn Jones opened the new Perry Hill Road Store, or to place Wallace in the Perry Hill Road Store when Jones returned to the Atlanta Highway Store - that Mr. Wallace was a more experienced candidate who was recommended for promotion by an experienced District Manager.  (Tab B, ¶ 11).

Epps concedes in her deposition that Mr. Wallace not only had a longer service record with Walgreen than she at the time of his promotion to Store Manager, but that he also worked as an EXA at two different stores, under two different Store Managers, prior to his promotion.  (Tab A, p. 111, l. 20 – p. 112, l. 15, p. 155, l. 12-16; Ex. 6; Tab B, ¶ 11).  Moreover, Epps is aware that Walgreens internal promotion policy provides that, "[i]f all other considerations are equal, length of service with the company should be considered in making a promotional decision."  As such, Epps can hardly show that Mr. Wallace's qualifications were so inferior to hers as to "jump off the page and slap you in the face;".  In fact, Mr. Wallace's undisputed experience and recommendations are precisely the sorts of qualifications that would motivate a reasonable employer to select

him for promotion, and Plaintiff cannot show those reasons are pretextual.  See <u>Floyd v.</u>
<u>Elmore Co. Bd. Of Ed.</u>, 322 F. Supp. 2d 1300, 1303-04 (M.D. Ala. 2004).

Plaintiff may attempt to offer hearsay evidence of alleged racially offensive discriminatory remarks made by Store Manager James Freeman (to others, not to Epps), but this argument fails for three reasons.  First, Freeman was not the individual responsible for hiring Walgreen Store Managers for any of its locations, and any stray remarks he may have made shed no light on the believability of Sheppard's reasons for his employment decisions.  See <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564-65 (11th Cir. 1997) (observing that, "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.") (internal citations and quotations omitted).

Secondly, Plaintiff concedes that Mr. Freeman not only told her he believed she was ready for promotion to the Store Manager position, but that he actually recommended her for promotion  (Tab A, p. 152, l. 1-21).  Finally, remarks about fried chicken and watermelon (Tab A, pp. 75, l. 22 – p. 77, l. 22, p. 80, l. 10 – p. 81, l. 18), if Freeman made them at all, were not so extreme as to cast doubt onto Walgreen's decision to promote  Wallace, who was undisputedly more experienced, sooner than Plaintiff. Epps was, in fact, promoted to Store Manager of the Perry Hill Store in February, 2005, a mere five months after Leland Wallace began managing that store.  Therefore, Epps cannot show Walgreen's reasons for promoting Wallace before her are pretext for discrimination, and Walgreen is entitled to summary judgment.

b.    **Alleged June, 2004, Birmingham Area Store Manager Position**

Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason for not selecting her as a Store Manager in or around June, 2004, in the Birmingham area – that it did not know of her interest in relocation to Birmingham – is pretext for unlawful discrimination.  Walgreen has offered evidence that Mr. David Sheppard exercised his business judgment in filling the June, 2004, Birmingham area Store Manager vacancy with the best available candidates known to him.  (Tab B, ¶ 11).  Plaintiff's own sworn deposition testimony establishes she never gave  Sheppard, or anyone else, reason to know of her interest in relocating to Birmingham, and that no comparable Caucasian EXA's in the Montgomery area were treated more favorably than she.  (Tab A, p. 19, l. 19 – p. 20, l. 8, p. 82, l. 19 – p. 83, l. 19, p. 114, l. 10 – p. 115, l. 10, p. 158, l. 19 – p. 159, l. 2).  In fact, Plaintiff offers no evidence to support her claim other than her own subjective opinion that she was not selected for this Birmingham position because of her race.  See Baltazor v. Holmes, 162 F.3d 368, 377, n.11 (5th Cir. 1998) (holding that, "[a] subjective belief alone is insufficient to create a jury question.").

Moreover, Plaintiff cannot show that her qualifications are so superior to those of Jackelyn Martin, the individual selected as the Valleydale Store Manager, as to "jump off the page and slap you in the face."  See Alexander, 325 F. Supp. 2d at 1286-87.  Ms. Martin, a college graduate, had more experience with Walgreen than Plaintiff, and had already worked as an EXA at the Valleydale store a full year at the time of her promotion to Store Manager there.  (Tab B, ¶ 13).

Therefore, Plaintiff cannot satisfy her burden that the decision-maker in this case was motivated by race, and Walgreen is entitled to judgment as a matter of law.  See

Walker, 286 F.3d at 1274 (observing that, "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker.") (citations and internal quotations omitted).

### C.    Plaintiff's Pattern and Practice Claims Also Fail

Plaintiff's allegations of a pattern and practice of race discrimination cannot be sustained for two reasons. First, and most importantly, such a claim fails as a matter of law if brought by a single, private plaintiff. See EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) (observing that a pattern and practice claim may be brought either "by the EEOC if there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimination … or by a class of private plaintiffs under 42 U.S.C. § 2000e.") (emphasis added).

Secondly, "in a pattern and practice disparate treatment case, the plaintiff must prove, normally through a combination of statistics and anecdotes, that discrimination is the company's standard operating procedure." Cooper v. Southern Co., 390 F.3d at 724 (citations and internal quotations omitted); Maddox v. Claytor, 764 F.2d 1539, 1557 (11th Cir. 1985) (holding that "[e]vidence of mere isolated or accidental or sporadic discriminatory acts will not suffice to show a pattern or practice of discrimination.") (internal quotations and citations omitted). Plaintiff cannot meet her burden in this case.

Here, Plaintiff offers no statistical evidence of a pattern and practice of racial discrimination; in fact, her evidence that she was actually promoted to the position of Store Manager in February, 2005, and that she knows of no other Montgomery area EXA's who were promoted to Store Manager more quickly than she indicates quite the

contrary.  (See Tab A, p. 160, l. 6-9).  The extent of Plaintiff's pattern and practice allegations consist of the following:

> (1) Jason Gremillion, an African American employee who was allegedly discriminatorily denied a Head Photo Technician position at the Perry Hill Road store in favor of a Caucasian new hire who had experience using the Fuji photo equipment used by the Perry Hill Road store, whereas Mr. Gremillion did not.  Nevertheless, Mr. Gremillion was later hired as the Head Photo Technician at the Perry Hill Road store by Leland Wallace.  (Tab A, p. 121, l. 10 – 12, p. 122, l. 13-15).

> (2) Barbara Wilson and Kimberly Freeman, two African American employees who were allegedly denied Senior Beauty Advisor positions in favor of a Caucasian employee identified by Plaintiff as "Angela."  Plaintiff is unaware of whether Ms. Freeman or Ms. Wilson ever applied for the disputed position, and she offers no evidence as to the relative qualifications of the successful applicant versus those of Mr. Freeman and Ms. Wilson.  (See Tab A, p. 133, l. 17 – p. 134, l. 15).

Plaintiff's suggestion that Walgreen's treatment of Gremillion is evidence of a pattern and practice of race discrimination is particularly suspect given that he was undisputedly promoted to his desired position, and he is currently performing in that capacity.  (Tab A, p. 121, l. 10-12, p. 122, l. 13-15).  Likewise, Plaintiff's own testimony indicates that no other EXA's, African American, Caucasian, or otherwise, were promoted to the position of Store Manager more quickly than she.  (Tab A, p. 160, l. 6-9; Tab B, ¶¶ 6 and 9).  Even if this Court accepted Plaintiff's allegations that two other African American employees were discriminatorily denied Senior Beauty Advisor positions,[9] these isolated events are hardly the sort of anecdotal evidence that would suggest that racial discrimination is Walgreen's "standard operating procedure."  See Hughes v. Ala. Dept. of Public Safety, 994 F. Supp. 1395, 1401 (M.D. Ala. 1998)

---

[9] Judge Albritton granted Walgreen's motion for summary judgment on Freeman's claim of race discrimination in promotion, on January 31, 2006, in 2:05-cv-356 in the U.S. District Court for the Middle District of Alabama.

(observing that "an employer's treatment of one other employee does not establish a pattern and practice."). Therefore, Plaintiff's pattern and practice claim fails as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on all of the plaintiff's claims. Defendant requests that this Court grant its Motion for Summary Judgment, dismiss this case with prejudice, and award Defendant its costs in defending against this action.

Respectfully submitted,

s\Alysonne O. Hatfield
J. Richard Carrigan  (CAR014)
Alysonne O. Hatfield  (HAT012)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Ph. (205) 328-1900
Fax (205) 328-6000
Email:  Richard.Carrigan@odnss.com
Email:  Alysonne.Hatfield@odnss.com
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on February 14, 2006, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Jay Lewis.


<u>s\Alysonne O. Hatfield</u>
Alysonne O. Hatfield
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
E-mail: Alysonne.Hatfield@odnss.com
