IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CANDACE EPPS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.: 2:05-CV-00498-C |
| | ) |
| WALGREEN CO., INC. | ) |
| | ) |
| Defendant. | ) |

# DEFENDANT'S REPLY IN SUPPORT OF ITS
# MOTION FOR SUMMARY JUDGMENT

John Richard Carrigan (CAR014)
Alysonne Hatfield (HAT012)
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL 35203-2118
Telephone: (205) 328-1900
Facsimile:  (205) 328-6000
E-mail: richard.carrigan@odnss.com
E-mail: alysonne.hatfield@odnss.com
ATTORNEYS FOR DEFENDANT,
WALGREEN CO., INC.

**I.     INTRODUCTION**

Walgreen is entitled to summary judgment in this promotion case because Plaintiff, Candace Epps, has abandoned her pattern and practice allegations,[1] and Plaintiff has no evidence that race was a factor in the job selections at issue. In the most basic terms, she cannot show that the nondiscriminatory reasons for selecting other candidates for the Summer 2004 Montgomery and Birmingham Store Manager positions were pretext to conceal race discrimination, so Walgreen is entitled to judgment as a matter of law.

**II.    PLAINTIFF'S PROMOTION CLAIM FAILS AS A MATTER OF LAW**

   **A.    Plaintiff's Statements of "Fact" Depend Upon Inadmissible Opinion and Hearsay**

At summary judgment, the plaintiff's testimony is generally taken at face value, provided it is based on personal knowledge. However, hearsay and relevance objections remain applicable, and summary judgment may not be defeated with testimony that would be inadmissible at trial. Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); Denney v. City of Albany, 247 F.3d 1189-90 n.10 (11th Cir. 2001) ("In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in admissible form."). Those limits are important in evaluating the assertions that Plaintiff presents in paragraphs 11, 12 and 14 of her "STATEMENT OF MATERIAL FACTS".

Paragraph 11 is mistaken about Wallace's promotion to Store Manager, which Plaintiff indicates to have occurred in "the Fall of 2004." Plaintiff lacks personal knowledge of the date of

---

[1] Plaintiff offers no response concerning the insufficiency of her "pattern and practice" allegations, and has therefore abandoned them. See, e.g., Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995); Swedish American Hosp. v. Midwest Operating Engineers Fringe Benefits Funds, 842 F.Supp. 1039, 1043 (N.D. Ill. 1993) ("[Plaintiff] ... has failed to respond to [Defendant's] arguments in their opposition papers, and therefore concedes these points); see also Valuzzi v. United States Postal Service, 775 F. Supp. 1124, 1125 (N.D. Ill. 1991); Southern Nevada Dealers Ass'n. v. Shell Oil, 725 F.Supp. 1104, 1109 (D. Nev. 1989).

2

Wallace's promotion, which is understandable because as an EXA she played no role in his promotion; however, Wallace had been promoted to manage the Atlanta Highway Store several months earlier when JoAnn Jones moved temporarily to open the Perry Hill Road Store. (Sheppard Decl., ¶¶ 8 - 10, attached as Tab B to Defendant's Initial Evidentiary Submission.) When Jones returned to the Atlanta Highway Store, Wallace moved to the Perry Hill Road Store. (Sheppard Decl., ¶¶ 9 - 10). To the extent that Plaintiff intends to dispute the date of Wallace's promotion, her testimony is based only on hearsay, and is inconsistent with the personnel records of Wallace's promotion. (Sheppard Decl., ¶ 9, Exh. A). At the time that Wallace moved to the Perry Hill Road Store, he had longer Walgreen service than Plaintiff, and had brief experience as manager at the Atlanta Highway Store. (Sheppard Decl., ¶ 9).

Paragraph 12, which is an attack on the qualifications of Leland Wallace based on Plaintiff's opinion as Wallace's subordinate, and derogatory hearsay regarding Wallace that Plaintiff attributes to James Freeman, is irrelevant, because those opinions are putatively based on deficient performance <u>after</u> Wallace was promoted to Store Manager, and could not possibly have been known (nor have they been alleged to have been known) to District Manager Sheppard when he promoted Leland Wallace. Likewise, the opinions of Epps (an EXA when she supposedly observed Wallace's deficiencies) and Freeman (a peer Store Manager who never exercised supervisory authority over Wallace) about Wallace's performance, whenever those opinions were formed, played no part in Sheppard's decision. District Managers, not peer Store Managers or EXAs, select Store Managers. (Sheppard Decl., ¶¶ 4 and 11; Epps depo., p. 32, l. 15 - p. 36, l. 20). District Manager Sheppard relied, according to his undisputed declaration, on Wallace's service with Walgreen, as well as the recommendation of an experienced District Manager, in selecting Wallace. (Sheppard Decl., ¶ 11). Whether Freeman or Epps would or

3

would not have selected Wallace (based on information later obtained), their opinions are simply irrelevant, because they did not play any part in the selection process, and did not communicate such opinions to Sheppard before the decision was made. See Rowell, 433 F.3d at 800-02 (holding that, when considering motions for summary judgment, statements made by management employees who did not participate in the disputed employment decision, and whose statements reflect nothing more than personal opinion, are not to be considered).

Paragraph 14, in which Plaintiff quotes Wallace as saying "that he also did not understand why she did not get promoted," would also be inadmissible because it is irrelevant. The statement that Plaintiff attributes to Wallace was not communicated to Sheppard, and Wallace played no part in Sheppard's decision to select him as Store Manager. (Sheppard Decl. ¶¶ 11 and 15). Wallace's statement, if made, is an assurance that he considered his (then) subordinate qualified for promotion, not direct evidence that he (or Sheppard) considered Plaintiff's race in any way in evaluating her for promotion. (Epps depo., p. 52, l. 3 - 53, l. 20, p. 65, l. 8 - p. 66, l. 18, attached as Tab A to Defendant's Initial Evidentiary Submission). See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (holding a decision-maker's remark that, "even though women aren't typically in that type of position we'll see what happens when we throw your name out there to corporate" was not the sort of "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption," as required to constitute direct evidence) (internal quotations and citation omitted).

  **B.**   **Plaintiff Did Not Make a <u>Prima Facie</u> Case for the Summer 2004 Birmingham Vacancy**

The weakness of Plaintiff's argument is apparent in her citation to McDonnell Corp v. Green, 411 U. S. 792 (1973) at page 8 of her Response to Motion for Summary Judgment, in

4

which she paraphrases McDonnell Douglas as creating a three-step prima facie case, by omitting the requirement that the plaintiff apply, which is crystal clear in McDonnell Douglas:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) **that he applied** and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from **persons of complainant's qualifications**. 411 U.S. at 802 (emphasis supplied)

The Supreme Court quoted that language from McDonnell Douglas in Furnco Construction Corporation v. Waters, and observed in footnote 4 to the Furnco decision that the district court had ruled against plaintiffs who failed to apply, and that the decision against the plaintiffs who did not apply was upheld. 438 U.S. 567, 573 n.4 (1978); see also Summerlin v. M&H Valve Co., No. 05-11030, 2006 WL 93131 at *2 (11th Cir. Jan. 17, 2006) (per curiam).

Although Plaintiff is a member of a protected class who was arguably qualified for the Store Manager position, Plaintiff neither satisfied the application requirement, nor did she offer evidence that Jackelyn Martin, a Caucasian female who was selected for that position, had credentials similar to those of the Plaintiff.[2]

In fact, Epps gave Mr. Sheppard no reason to know she would be interested in relocation to Birmingham. In her Response Brief, Epps cited her confusing deposition testimony where, in response to being asked whether she asked Mr. Sheppard to promote her to Store Manager *at the Perry Hill Road store*, she replied, "I asked him that I wanted to be a store manager and I was ready to go. I wanted to be promoted then to the position, whatever was open, where it was open." (Epps depo., p. 43, l. 14-18). One page later, however, Epps clarifies her testimony to indicate her interest was limited to the Montgomery area: "I'm in Montgomery and I was ready to

---

[2] David Sheppard selected Jackelyn Martin, an EXA with a college degree who had already been working in the Valleydale Store for a year at the time the Store Manager position became available there. (Sheppard Decl., ¶ 13).

go for a store manager position when a store opened up." (Epps depo., p. 44, l. 14-17). Despite Plaintiff's spin in her Response Brief, she never actually told Mr. Sheppard she wished to work in Birmingham:

>     Q:   The position in Birmingham, you said you wanted to go to Birmingham?
>     A:   Yes, when I discussed Montgomery.
>     Q:   Okay. You never talked to him about Birmingham, did you?
>     A:   No.
>     Q:   Who got the job in Birmingham?
>     A:   Ms. Martin.
> …
>     Q:   Okay. Never said you wanted to work in Birmingham, right?
>     A:   No, I never talked to Sheppard.
>     Q:   I'm sorry. What did you just say?
>     A:   I never spoke with him after the last time, no.
>     Q:   But you never said you wanted to work in Birmingham?
>     A:   No, I never talked to him again.

(Epps's depo., at p. 157, l. 5-13 and at p. 158, l. 3-13).

Such an unfocused general interest in promotion without applying is sufficient to establish a prima facie case of discrimination when the employee is aware of the available position and she has neither been "dissuaded nor prevented" by management from so applying. See Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003).

Plaintiff interprets Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984), to hold that an employer is obligated to consider every minority employee for all its available positions in each of its locations if it does not formally publicize those availabilities, an outcome that is simply not required by the Eleventh Circuit Court of Appeals. More accurately, Carmichael permits a plaintiff to circumvent her application requirement only when she can show her employer had a "reason or a duty" to consider her for a position in which she "might reasonably be interested." 738 F.2d at 1133. Under this set of facts, Plaintiff simply cannot stretch Carmichael's holding to excuse her from her application requirement when she had given

6

Walgreen no reason to know she would be interested in relocating to a Birmingham store. Compare Walker v. Prudential Property and Casualty Ins. Co., 286 F.3d 1270, 1275-76 (11th Cir. 2002) (holding that female employees were not excused from the application requirement when the employer transferred a male employee to an un-posted position in another city because the male employee notified the employer of his interest in relocating, whereas the female employees did not) with Roberts v. Gadsden Memorial Hosp., 835 F.2d 793, 798 (11th Cir. 1988) (employer had reason to know plaintiff was interested in position because he had previously applied for same job when it was available earlier).

    Nor did Epps provide evidence that Walgreen treated any comparable employee outside her protected group more favorably, and in particular, she has no evidence that Walgreen "continued to seek applicants from persons of complainant's qualifications." None of the other Montgomery-area EXAs who had passed the PTCB (including white males with more company service than Epps) were automatically considered or selected for the Valleydale Road Store in Birmingham, and the person who was selected, Jackelyn Martin, had already been working in the Valleydale Store for a year at the time the Store Manager position became available there. (Epps depo., p. 19, l. 19 - p. 20, l. 5, p. 47, l. 18 - p. 48, l. 1, p. 114, l. 10 - p. 115, l. 10; Sheppard Decl., ¶¶ 12 and 13, Exh. B). As such, Plaintiff cannot establish a prima facie case of discrimination in promotion. See Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (affirming grant of summary judgment for employer and noting that employee could not establish a prima facie case because she failed to point to any persons outside the protected class who were treated more favorably than her).

      **C.      Plaintiff Cannot Show Walgreen's Reasons for Selecting the Successful Candidates were Pretextual**

Epps attacks Sheppard's explanation as pretextual based on her subjective opinions of her own qualifications and opinions (her own and hearsay from James Freeman), formed after Wallace's promotion, that Wallace was not a very good store manager.[3] Granted that Epps esteems herself more highly than she does Wallace, and even that Freeman might hold the same view, there is no evidence that those opinions were ever communicated to, or held by, Sheppard. Aside from the fundamental impossibility that Sheppard could have known at the time he promoted Wallace that Freeman and Epps would subsequently consider Wallace deficient as a store manager, their opinion about Wallace's post-promotion performance would at most be evidence of difference in evaluation, not that race was a factor in Sheppard's decisions.

When Leland Wallace and Jackelyn Martin were selected as Store Managers in June and July, 2004, each had the same PTCB certification as Epps, and each had longer service with Walgreen. (Sheppard Decl., ¶¶ 9, 11, 13, Exh. A and B). Martin had experience as a BMI (Business Management Intern) and as an EXA in the Valleydale Store in Birmingham and a college degree. (Sheppard Decl., ¶ 13, Exh. B). Wallace had a favorable recommendation from an experienced district manager under whom he had worked in Florida. (Sheppard Decl., ¶ 11). Epps fails to show Walgreen's reasons for selecting Leland Wallace and Jackelyn Martin as Store Managers in June and July, 2004 were pretexts for unlawful discrimination, because she does little more than disagree with those reasons, rather than demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in (Walgreen's) proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of

---

[3] The inadmissibility of the opinions on which Epps relies is discussed above.

credence." See Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997), cert. denied sub nom Combs v. Meadowcraft Co., 522 U.S. 1045 (1998); see also Bradford v. Rent-a-Center East, Inc., 346 F. Supp. 2d 1203, 1211-12 (M.D. Ala. 2004).   Therefore, Plaintiff fails to meet her ultimate burden to show that she has been the victim of intentional discrimination, and her promotion claim fails.  See Lee v. GTE Fla., Ind., 226 F.3d 1249, 1253 (11th Cir. 2000), cert. denied, 532 U.S. 958 (2001); see also Tex. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981) (holding that a plaintiff has "the ultimate burden of persuading the court (he) has been the victim of intentional discrimination.").

### 1.     The Perry Hill Road Position

In her Response, Epps attempts to show Walgreen's reasons for selecting Leland Wallace as Store Manager at the Perry Hill Road Store are pretextual by asserting her qualifications were superior to those possessed by Mr. Wallace, and by disagreeing with the reasons Sheppard gave her for delaying her promotion to that position – that he wanted her to work as an EXA under a more experienced store manager, and that he felt he did not know her very well.  Walgreen will address each point in turn.

First, Ms. Epps cannot show pretext by arguing her qualifications were superior to Wallace's.  Recently, the United States Supreme Court rejected the Eleventh Circuit's holding that "[p]retext can be established through comparing qualifications only when the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face."  Ash v. Tyson Foods, Inc., --- U.S. ---, 126 S. Ct. 1195, 1197 (Feb. 21, 2006) (internal citations omitted). In so holding, however, the Court cited with approval to other pretext standards used by the Eleventh and other Circuit Courts of Appeal: Cooper v. Southern Co., Inc., 390 F.3d 695, 732 (11th Cir. 2005), cert. denied, 126 S. Ct. 478 (2005) (noting that, "disparities in qualifications

9

much be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question"); Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are "'clearly superior'" to those of the selected applicant); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (concluding the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified than the job"). Ash, 126 S. Ct. at 1197. Plaintiff's evidence fails to show pretext under any of these standards.

At no time does Epps dispute that Mr. Wallace has been employed by Walgreen since October 2001, a full nine months before her July 2002 start-date with Defendant. (Sheppard Decl., ¶ 9 & Ex. A). Furthermore, Epps does not call into question Mr. Sheppard's added justification for selecting Mr. Wallace as the Perry Hill Road Store Manager – that Wallace was highly recommended to him by his fellow District Manager, Jim Huntington, who had worked with Mr. Wallace before he came to Sheppard's District. (Sheppard Decl., ¶ 11). Quite reasonably, Mr. Sheppard placed greater weight on Mr. Huntington's recommendation of Wallace than he did in Epps's own assessment of her abilities. (Sheppard Decl., ¶ 11). Epps offers this Court no reason to believe her qualifications were superior, or even equal, to Mr. Wallace's, other than her own assessment of her abilities, which is insufficient to show pretext as a matter of law. See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998); Johnson v. Auburn University, 403 F. Supp. 2d 1101, 1111 (M.D. Ala. 2005) ("Moreover, the relevant inquiry is how the employer values the employee, not the employee's subjective view of her value.").

Secondly, Epps fails to raise any genuine dispute of material fact with respect to Sheppard's reasons for telling her that she was not ready for promotion in the summer of 2004. In arguing that Sheppard's alleged remark to her that he did not feel as though he knew her as well as he would like, Epps does nothing more than compare her longer length of time in Sheppard's district with Wallace's eight months there. Again, she does not dispute Wallace's total longer service record with Walgreen; nor does she dispute Sheppard's reliance on the recommendation of his fellow District Manager, Mr. Huntington.

Likewise, Epps's attempts to disagree with Sheppard's desire that she work under another experienced Store Manager before her own promotion to that position do not show any discriminatory motive. She does not dispute that her first Store Manager, Shahn Michiels, was terminated for misconduct and poor performance, and does not even appear to disagree with Sheppard's conclusion that Michiels was "not a good manager." (Plaintiff's Response, p. 12; Sheppard's Decl., ¶ 6). Moreover, while she sarcastically questions what kind of "'valuable experience'" she could glean from working two months under JoAnn Jones, she does not directly rebut Sheppard's proffered business judgment that he believed Epps could benefit from the experience of opening a new Walgreen store to the public under an experienced and trusted Store Manager. (Sheppard's Decl., ¶ 7). Epps does nothing more than question or disagree with Walgreen's judgment in promoting Mr. Wallace to the Perry Hill Road store in the summer of 2004, and she thus fails to show Walgreen's reasons for not so promoting her were pretext for an unlawful motive. See Rowell, 433 F.3d 794, 798 ("It is by now axiomatic that we cannot second-guess the business decisions of an employer."); Combs, 106 F.3d at 1543 (holding that "(the employer's) decision to promote Walker instead of Combs may seem to some to be a bad

11

business judgment, and to others to be good business judgment, but federal courts do not sit to second-guess the business judgment of employers.").

### 2. The Birmingham Store Manager Position

Epps's attempts to discredit Walgreen's decision to promote Jackelyn Martin to Store Manager of its Birmingham Valleydale Road store also fail. Again, Epps argues that her alleged statements to Sheppard that she wanted to be promoted to Store Manager at any of Walgreen's stores, rather than just those in the Montgomery area where she already lived and worked, gave Walgreen a reason or duty to know of her interest in the Birmingham position. Walgreen has already presented Epps's deposition testimony, however, wherein she admitted that she did not, in fact, tell Sheppard she desired a relocation to Birmingham, and wherein she indicated she was interested in the Montgomery area only. (See, infra pp. 5-6).

Even if this Court believed that Sheppard knew of Epps's supposed interest in Birmingham, however, Epps nonetheless fails to rebut Walgreen's other legitimate, nondiscriminatory reasons for selecting Ms. Martin – that she was a college graduate with longer service with Defendant who had already served as an EXA for the Valleydale store for a full year prior to her promotion to Store Manager. (Sheppard Decl., ¶ 13 & Ex. B); see Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000) (holding that, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proferred nondiscriminatory reasons is pretextual.") (emphasis added).

As such, Epps simply cannot demonstrate that her qualifications for the Store Manager position so surpassed those of Mr. Wallace and Ms. Martin such that "no reasonable person"

could have selected them over her, as set forth in Cooper, 390 F.3d at 732; that her qualifications were "clearly superior" to Wallace's and Martin's, as required to show pretext by the court in Raad, 323 F.3d at 1194; or that a "reasonable employer" would find Epps "significantly better qualified" than Wallace and Martin, as required by the Circuit Court of Appeals for the District of Columbia in Aka, 156 F.3d at 1294.  At worst, even if this Court found Wallace's and Martin's qualifications to be equal to those possessed by Epps, she still fails to present evidence of any pretextual motive.  See Simms v. Oklahoma, 165 F.3d 1321, 1330 (10th Cir. 1999) (holding that, "[w]hen two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.") (internal citation and quotations omitted), cert. denied, 528 U.S. 815 (1999).  Therefore, Epps fails to show Walgreen's reasons for selecting Wallace and Martin for the disputed position are pretexts for discrimination, and Walgreen is entitled to summary judgment.

## III.   CONCLUSION

Walgreen is entitled to summary judgment on all of Plaintiff's claims because she has abandoned any pattern and practice allegations, because Walgreen had no reason or duty to consider her for the Birmingham Store Manager position, and because she has no evidence that David Sheppard considered her race in any way in making selections for the positions at issue.

Walgreen requests that this Court grant its Motion for Summary Judgment, dismiss this case with prejudice, and award Walgreen its costs in defending this action.

                                      Respectfully submitted,

                                      s/ J. Richard Carrigan
                                      J. Richard Carrigan (CAR014)
                                      Alysonne O. Hatfield (HAT012)
                                      *Attorneys for Defendant*
                                      Ogletree, Deakins, Nash, Smoak
                                            & Stewart, P.C.
                                      One Federal Place, Suite 1000
                                      1819 Fifth Avenue North
                                      Birmingham, AL 35203-2118
                                      E-mail: Richard.Carrigan@odnss.com
                                      E-mail: Alysonne.Hatfield@odnss.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 16th day of March, 2006, I electronically filed the foregoing Defendant's Reply in Support of Its Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Jay Lewis.

                                      s/ J. Richard Carrigan
                                      John Richard Carrigan (CAR014)
                                      *Counsel for Defendant*
                                      OGLETREE, DEAKINS, NASH,
                                      SMOAK & STEWART, P.C.
                                      One Federal Place, Suite 1000
                                      1819 Fifth Avenue North
                                      Birmingham, Alabama 35203
                                      Telephone: (205)328-1900
                                      Facsimile: (205)328-6000
                                      E-mail: Richard.Carrigan@odnss.com