IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
CANDACE EPPS,                )
                             )
        Plaintiff,           )
                             )  CIVIL ACTION NO.
        v.                   )    2:05cv498-MHT
                             )        (WO)
WALGREEN CO., INC.,          )
                             )
        Defendant.           )
```

OPINION

Plaintiff Candace Epps, an African-American woman, brings this lawsuit against defendant Walgreen Co., Inc., under two federal statutes: Title VII of the Civil Rights Act, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17 ("Title VII"); and Civil Rights Act of 1866, as amended, 42 U.S.C.A. § 1981 ("1981").  Epps claims that she was denied a promotion on the basis of her race.[1] Jurisdiction over Epps's Title VII claim is proper under 42 U.S.C.A. § 2000e-5(f)(3), and over her § 1981 claim under 28 U.S.C.A. § 1343.

_____

1.  Pursuant to an order dated May 15, 2006 (Doc. No. 25), Epps's claim alleging a pattern and practice of discrimination was dismissed.

Having reviewed the factual record in detail, the court concludes, for reasons given below, that Walgreen's motion for summary judgment should be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts

2

showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


II. BACKGROUND

The following facts are construed in Epps's favor as the non-moving party:

3

<u>July 21, 2002</u>: Epps was hired as an assistant store manager at the Walgreen store located on the South Boulevard in Montgomery, Alabama.[2]

<u>March 2003</u>: Epps's direct supervisor, the store manager at the South Boulevard store, was fired for policy violations and poor performance.[3]

<u>July 2003</u>: Epps was promoted to Executive Assistant Manager ("EXA") under a new store manager, James Freeman.[4]

<u>March 2004</u>: Epps took and passed a Pharmacy Technician Certified Board examination, required for promotion from EXA to store manager under Walgreen company policy. Around the same time, Epps received her annual employment evaluation.[5] In the section of the

---

2. Defendant's motion for summary judgment (Doc. No. 13), Exhibit A-4, Employment Record of Candace Epps.

3. <u>Id</u>., Exhibit B, Declaration of David Sheppard ("Sheppard declaration"), p. 2.

4. <u>Id</u>.

5. Although this evaluation was for a period ending March 16, 2004, Epps testified that she actually completed the self-evaluation portion of the document in January 2004. <u>Id</u>., Exhibit A, Deposition of Candace (continued...)

evaluation relating to transferability and career growth, Store Manager Freeman wrote that Epps "Still needs some experience before being considered for promotion to MGR [manager]; can move laterally."[6]    Epps, in the area reserved for self-evaluation, wrote: "I am eager to be store MGR, but still need some work before I am able to be promoted."[7]

 <u>May 2004</u>: Epps reviewed her evaluation with then-District Manager David Sheppard.  During her conversation with Sheppard, Epps expressed her desire to be promoted to the position of store manager, although the parties dispute--and the record is unclear--whether Epps's interest at that time was limited to promotions at stores in the Montgomery area.

 Sheppard told Epps that he did not feel that he knew her well enough for promotion at that time and that he

_____

     5.   (...continued)
Epps ("Epps deposition"), p. 18.

     6.   <u>Id</u>., Exhibit A-2, Epps Employment Review, p. 2.

     7.   <u>Id</u>.

wanted her to work for two experienced store managers first. Epps pointed out that she had already worked for two store managers, but Sheppard said that he did not include her first manager in his count because he had been fired for poor performance.[8]

June 2004: Epps requested and obtained a second meeting with Shephard to clarify his expectations for how and when she would be promoted.[9] Sheppard assigned Epps to help open a new Walgreen store on Perry Hill Road under the temporary supervision of a third store manager, JoAnn Jones. At that time, Sheppard had already selected Leland Wallace, a white man, to be the eventual store manager at the Perry Hill Road location.[10] It is undisputed that at that time Wallace had longer tenure

_____

8. Epps deposition, pp. 23-24.

9. Id., pp. 26-27.

10. Sheppard declaration, p. 3.

6

than Epps both in the position of EXA and with the company generally.[11]

Also during the summer of 2004, a store manager position opened at the Walgreen store on Valleydale Road, in Birmingham, Alabama. Sheppard assigned this position to Jackelyn Vardaman (now Martin), a white woman with a college degree who had already been working as an EXA in that store, and who also had a longer service record with Walgreen (though only slightly) than Epps.[12]

---

11.  Defendant's motion for summary judgment (Doc. No. 13), Exhibit A-6, Wallace Employment Record. Wallace was hired in October 2001 and was promoted to EXA in May 2003.

12. Walgreen hired Jackelyn Vardaman on June 3, 2002 as a business management intern, whereas Epps was hired on July 21, 2002, as an assistant store manager. Vardaman was promoted to assistant store manager in September 2002. Both Vardaman and Epps were promoted to EXA in July 2003. Therefore, Epps had been an assistant store manager for slightly longer than Vardaman when both were promoted to EXA. The two women had the same length of tenure in the EXA position at the time Vardaman was promoted to store manager in July 2004, and Vardaman had slightly longer total tenure than Epps. Sheppard declaration, Attachment B, Employment Record of Jackelyn Martin.

<u>October 11, 2004</u>: Epps filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging race discrimination in Walgreen's failure to promote her to the position of store manager.

<u>February 2005</u>: Epps was promoted to store manager at the Perry Hill Road store, replacing Wallace.

It is undisputed that no EXA in the Montgomery area was promoted to store manager more quickly than Epps during this time period. One white male EXA took and passed the pharmacy certification test with Epps, yet had not been promoted to store manager by February 2006, a year after Epps's promotion. Another white male EXA passed the pharmacy certification test in July 2004, and had also not been promoted by February 2006.[13]

The evidence before the court suggests that Walgreen lacks a clear application process for internal applicants interested in open positions. The record reflects two written policies governing promotions: (1) "It is the

_____

13. Sheppard declaration, p. 4.

8

policy of Walgreen Co. that, whenever current employees are equally qualified with other applicants, all but entry level positions should be filled by promoting current employees"; and (2) "All employees are to be given equal opportunity for advancement.  If all other considerations are equal, length of service with the company should be considered in making a promotional decision."[14]

### III. DISCUSSION

Under both Title VII and § 1981, it is, in general, illegal for an employer to discriminate against its employees because of their race.  42 U.S.C.A. § 2000e-2(a)(1); 42 U.S.C.A. § 1981.

This case is governed by the familiar burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the <u>McDonnell Douglas</u> approach, a plaintiff has the initial burden of establishing a prima-

---

14. Epps deposition, Exhibit 1, excerpt of personnel policy.

9

facie case of unlawful employment discrimination by a preponderance of the evidence. <u>Id</u>. at 802; <u>Young v. General Food Corp.</u>, 840 F.2d 825, 828 (11th Cir. 1988). If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating legitimate, non-discriminatory reasons for its employment action. <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). The defendant has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. <u>See, e.g.</u>, <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 253-55, 258 (1981); <u>McDonnell Douglas</u>, 411 U.S. at 802.

Once the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to

10

permit a reasonable factfinder to conclude that the reasons given by the [defendant] were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (citations omitted). The plaintiff may meet this burden by persuading the court that a discriminatory reason more than likely motivated the defendant or by demonstrating that the proffered reason for the employment decision is not worthy of belief. Burdine, 450 U.S. at 256; see also Young, 840 F.2d at 828. This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proferred explanation. Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

To establish a prima-facie case of race discrimination in promotion, Epps must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action (here, the failure to promote); and (4) the

employer either continued to seek applicants or filled the position with an employee outside her protected class. Walker v. Mortham, 158 F.3d 1177, 1192 (11th Cir. 1998).

In the context of discrimination claims based on the failure to promote, the plaintiff may in some circumstances meet her prima-facie burden even if she never applied for the position in question. Where, as here, the employer relies on informal methods and does not post available positions, the employer has "a duty to consider all those who might reasonably be interested." Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984); Freeman v. Walgreen Co., 2006 WL 229869 (M.D. Ala. 2006)(Albritton, J.).

The court will separately address the promotions at the Perry Hill Road store in Montgomery, Alabama, and at the Valleydale Road store in Birmingham, Alabama.

A. Perry Hill Road Walgreen Store (Montgomery)

The court will assume that Epps has established a prima-facie case in her challenge to the promotion at the Perry Hill Road store.  Walgreen has also met its burden of coming forward with a legitimate, non-discriminatory reason for the challenged action: namely, that Wallace was promoted because of his longer service record and because he was recommended for promotion by a district manager in Florida under whom he had worked.[15]  Therefore, the critical question is whether Epps has produced

_____

15. Sheppard, the district manager responsible for promoting Wallace, states:

> "In choosing Mr. Wallace for this position instead of Ms. Epps. I considered Mr. Wallace's longer service with Walgreen, as well as the fact that he had been recommended to me for the position of Store Manager by my fellow distrit manager, Jim Huntington, a Florida Walgreen district manager who had worked for Mr. Wallace since his 2001 hire by Walgreen, and in whose judgment I placed great weight."

Sheppard declaration, p. 3.

13

sufficient evidence that Walgreen's stated reasons are pretextual.

Epps does not challenge the fact that Wallace was recommended for the job, and she concedes that Wallace had a longer service record, both as an EXA and in absolute terms, and that he had already worked as an EXA for two different store managers before his promotion.[16]

_____

16. Epps testified:

"Q. Would you agree that he [Wallace] became an EXA in May of 2003 and you didn't become an EXA until July of 2003?

"A. Yes.

"Q. And would you agree that he had been an EXA in Brandon, Florida, as well as at Montclair Road in Birmingham, Alabama, before he became the manager at the Perry Hill store?

"A. Yes.

"Q. Which of you, Mr. Wallace or you, had longer service with Walgreens at the time he was selected for – as manager of the Perry Hill Road store?

"A. Mr. Wallace."

(continued...)

14

However, she asserts four reasons why the nondiscriminatory reasons advanced by Walgreen for Wallace's promotion should be considered pretextual.

First, Epps argues that her qualifications, while admittedly inferior to those of Wallace on paper, were in fact superior because after Wallace's promotion he asked Epps how to do certain aspects of his job.[17]  Epps notes

---------------

16. (...continued)
Epps deposition, p. 112.

17. When asked explicitly why she felt that Wallace's promotion over her involved a racial element, Epps testified:

> "Q. Why do you say it was race?
>
> "A. Because I felt like I was more than ready to go.  My store manager said I was ready to go, and they promoted someone else that was white and he was not ready to go.  He was not ready for that position.
>
> "Q. How do you know he was not ready for that position?
>
> "A. Because most definitely, I saw it in how he worked.  I saw it in his performance and he didn't know a lot and he came to me to ask."

(continued...)

that her supervisor, Freeman, also believed Wallace's performance to be deficient.[18]

However, a plaintiff's subjective belief that she was more qualified than another employee, and even a court's belief to that effect, is insufficient evidence to avoid summary judgment in a promotion discrimination claim. Brooks v. County Comm'n, 2006 WL 997725 (11th Cir. 2006) ("[O]ur inquiry at the third stage of the McDonnell Douglas analysis of a promotion discrimination claim is not concerned with [plaintiff]'s belief that she was more qualified or whether we could conclude that she was better qualified than [promotee].").

_____

17. (...continued)
Id., pp. 30-31.

18. Epps testified:

    "Q. Did Mr. Freeman tell you that Mr. Wallace was green and didn't know a lot?

    "A. Yes, sir."

Id., p. 33.

Freeman's opinion of Wallace's performance, offered through the deposition testimony of Epps, is probably inadmissible hearsay, since he was never Wallace's supervisor and did not take part in the decision to promote Wallace.  See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (finding the personal opinion of a supervisor uninvolved in the decision-making process inadmissible even as circumstantial evidence of discriminatory intent).  Regardless, it is undisputed that both Epps and Freeman formed their opinions of Wallace after his promotion, and never communicated these opinions to Sheppard.[19]  Therefore, even if they were

---

19. Epps testified:

> "Q. So you didn't have any discussion about Mr. Wallace's credentials or qualifications with Mr. Shepard [sic] at any time?
>
> "A. No, because it wasn't stated that Mr. Wallace had the position at that time.
>
> "Q. Did you ever talk to Mr. Shepard [sic] about your opinion of Mr.
> (continued...)

otherwise relevant, Sheppard could not have taken these personal opinions into account in his decision to promote Wallace.

The Eleventh Circuit Court of Appeals recently made clear that a plaintiff seeking to use comparative qualifications to rebut a defendant's proffered nondiscriminatory reasons for promoting another employee "must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" <u>Brooks</u>, ___ F.3d ___, ___, 2006 WL 997725 * 2 (quoting <u>Cooper v. S. Co.</u>, 390 F.3d 695, 732 (11th Cir. 2004), <u>cert. denied</u>, 126 S. Ct. 478 (2005)); <u>see also</u> <u>Ash v. Tyson Foods</u>, Inc., 126 S. Ct. 1195, 1197 (2005) (per curiam) (striking

---

19. (...continued)
   Wallace's qualifications?

   "A. No."

<u>Id.</u>, p. 39.

down the Eleventh Circuit's "slap in the face" standard
of comparing employee qualifications, and citing with
approval the standard articulated in <u>Cooper</u>).

Here, there is no question but that a reasonable
person might promote Wallace based on his longer service
and the district manager's recommendation.  Epps offers
no evidence that her qualifications were superior to
those of Wallace other than her own opinion of her
abilities compared to his: an opinion formed, moreover,
after his promotion.  Epps's performance review dated
March 2004 suggests that she herself believed she needed
more experience only a month before she first expressed
her desire for promotion to Sheppard.  Epps has not shown
that her qualifications, either in the abstract or as
they were known to Sheppard, were in any way superior to
those of Wallace, much less that they were so superior
that no reasonable person could have chosen Wallace over
her.

19

Epps argues, however, that three additional facts support her claim that the nondiscriminatory reasons proffered by Walgreen for Wallace's promotion are unworthy of credence: (1) Sheppard stated that Epps needed to work for at least two store managers, but then said that her first manager did not count when she pointed out that she had already done so; (2) Sheppard assigned Epps to work under JoAnn Jones for only two months; (3) Sheppard stated that he did not know Epps well enough to promote her, despite the fact that she had worked for him longer than Wallace had.

With respect to Sheppard's first statement, Epps has shown that she had worked for two managers at the time Sheppard stated this requirement for promotion. However, Sheppard's statement that Epps's first manager would not count is based on a racially neutral determination: that the first manager was a poor one. Epps does not dispute that her first manager was fired for poor performance and policy violations, and offers no argument as to why this

fact is not a valid reason for expecting her to work under a third manager before promotion.

Similarly, Epps offers no reason why her assignment to help open a new store under the temporary supervision of JoAnn Jones is evidence of pretext in this case. Epps apparently did not realize Jone's assignment was a temporary one, and she feels that she did not learn enough from Jones in two months to have made the experience worthwhile.[20] Her argument is limited to the

_____

20. Epps testified:

"Q. Okay. Why do you think that Mr. Shepard's [sic] decision [to temporarily assign Jones to manage the opening of the Perry Hill store] was based on race rather than based on wanting you to have more experience with an experienced store manager?

"A. If he wanted me to have experience with an - another store manager, he would have made me stay with that store manager and made me work with that store manager. He basically told me the store manager was there at that store and that's where she was going to be, not she was just there to open the and leave. My understanding was it was
(continued...)

following statement: "It is unclear what kind of 'valuable experience' Epps could gain by working only two months with Jones."[21]

The court can envision any number of legitimate employment-related reasons that might motivate a reasonable employer to assign a candidate for promotion to open a new store under the temporary supervision of an experienced manager. However, the court is "not in the business of adjudging whether employment decisions are prudent or fair. Instead, [this court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." <u>Damon v. Fleming Supermarkets of Florida, Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999). Because Epps offers no reason why her

---

20. (...continued)
      going to be that I worked with her as an
      experienced store manager because she
      knew a lot and I was going to learn from
      her, but that wasn't the case."

<u>Id</u>., p. 41.

21. Plaintiff's response to defendant's motion for summary judgment (Doc. No. 15), p. 12.

assignment to work under Jones should be seen as motivated by race, other than that she did not feel she learned from the experience, the assignment is not sufficient evidence to permit a reasonable factfinder to conclude that the nondiscriminatory reasons given for Wallace's promotion over Epps were not the real reasons.

Finally, Epps points to Sheppard's statement that he did not know her well enough for promotion as potential evidence of pretext. This is indeed an inconsistency in Walgreen's account, since Sheppard should have known Epps, whom he had supervised since she began working for the company, at least as well as he knew Wallace, who transferred into Sheppard's district in October 2003.[22] However, the question is not whether Epps can identify any inconsistent statement in the history of her employment, but whether she has presented evidence sufficient to create a triable issue of fact as to

_____

22. Defendant's motion for summary judgment (Doc. No. 13), Exhibit A-6, Employment Record of Leland Wallace, Jr.

23

whether she was discriminated against on the basis of her race.

Sheppard's statement, alone, is not sufficient to create an inference of pretext, because it does not truly call into question the undisputed nondiscriminatory reasons for Wallace's promotion: his greater experience and the recommendation from his previous district manager.

The latter factor is especially relevant in light of Epps's evaluation of March 2004, in which both she and her direct supervisor indicated her need for more experience before promotion. Moreover, Sheppard's statement must be understood as part of a broader employment context in which Epps's was promoted to store manager more quickly than any other employee in the area, including Wallace, during the relevant time frame.[23]

---

23. At the time of her promotion to store manager, Epps had 30 months' experience with Walgreen, slightly less than the approximately 32 months' experience with Walgreen that Wallace had at the time of his promotion in June 2004.

Where, as here, "the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." <u>Grigsby v. Reynolds Metals, Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987). Summary judgment is due to be granted on Epps's claim involving the Perry Hill road promotion.

### B. Valleydale Road Walgreen Store (Birmingham)

Epps also challenges the promotion of Jackelyn Vardaman (now Martin) to the position of store manager at the Walgreen store on Valleydale Road in Birmingham, Alabama during the summer of 2004. Walgreen vigorously disputes the allegation that Epps ever expressed an interest in a position outside of Montgomery, and Epp's deposition testimony is unclear on this point.[24]

_____

24. Epps's contention that Walgreen should have known of her interest in promotion to a position outside of Montgomery is arguably supported by the following (continued...)

25

However, even assuming that Walgreen was obligated to

consider Epps for the position in Birmingham and Epps has

---

24. (...continued)
testimony:

> "Q: Okay.  Did you ask Mr. Shepard [sic]
> to make you manager of the Perry Hill
> store [in Montgomery]?
>
> "A. I asked him that I wanted to be a
> store manager an I was ready to go.  I
> wanted to be promoted then to the
> position, whatever was open, where it
> was open."

Epps deposition, p. 43.  Elsewhere, however, Epps's own
testimony indicates that her interest was limited to
Montgomery:

> "That's what I stated.  I'm in
> Montgomery and I was ready to go for a
> store manager position when a store
> opened up....
>                     ...
>
> "Yes.  That's what I wanted, to be
> promoted to store manager in the store
> in Montgomery that was open.
>                     ...
>
> "I feel like I'm more than qualified to
> be promoted to the store manager
> position in Montgomery."

<u>Id</u>. p. 44, 45-46.

established a prima facie case, she fails to rebut
Walgreen's nondiscriminatory reasons for promoting
Vardaman: that Vardaman had a college degree, more
experience with Walgreen generally, and more experience
at the Valleydale store in particular, where she had
already worked as EXA for a year. Epps does not
challenge these reasons with any evidence of pretext;
rather, she simply states that she was qualified for the
position and Walgreen did not consider her because she
was black.[25]

As noted above, if Epps relies on her allegedly
superior qualifications as evidence of pretext in
Walgreen's decision not to promote her, she must show
that the disparities between her qualifications and those
of Vardaman were "of such weight and significance that no
reasonable person, in the exercise of impartial judgment,
could have chosen the candidate selected over the
plaintiff." Cooper, 390 F.3d at 732. Epps had been an

---

    25. Plaintiff's response to defendant's motion for
summary judgment (Doc. No. 15), p. 13.

assistant store manager for slightly longer than Vardaman at the time both were promoted to EXA. The two women had been in the EXA position for the same amount of time when Vardaman was promoted to store manager, and Vardaman had slightly longer total tenure with Walgreen.[26]  Epps's length of service might be roughly equivalent to Vardaman's, but Epps's does not possess a college degree. A reasonable person might easily have promoted Vardaman to the position over Epps.  Quite simply, Epps has presented no evidence of pretext to rebut Walgreen's nondiscriminatory reasons for Vardaman's promotion, and summary judgment is due to be granted on that claim.


## IV. CONCLUSION

The court can discern no evidence of a discriminatory purpose behind Walgreen's decision to promote two employees to the position of store manager over Epps, when Epps's qualifications were at best equal to those

_____

26. Sheppard declaration, Attachment B, Employment Record of Jackelyn Martin.

28

two employees, when it is undisputed that the two employees had worked for Walgreens longer than Epps, and when it is undisputed that Epps was promoted to store manager more quickly than any other candidate in Montgomery during the relevant time period, regardless of race. Because no genuine issue of fact exists for trial, summary judgment on Epps's race discrimination claim will be granted.

An appropriate judgment will be entered.

DONE, this the 1st day of June, 2006.

_____ /s/ Myron H. Thompson _____
UNITED STATES DISTRICT JUDGE